UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL UNION, UAW
and LOCAL 155,

    Plaintiffs,                                    Case No. 11-11584
                                                    Hon. Lawrence P. Zatkoff

v.

METALLURGICAL PROCESSING
COMPANY,

    Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on January 25, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on the parties' cross motions for summary judgment [dkts 9 & 10]. The motions have been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Plaintiffs' motion [dkt 10] is DENIED, and Defendant's motion [dkt 9] is GRANTED.

**II. BACKGROUND**

Plaintiffs International Union and UAW Local 155 ("the Union") challenges a labor arbitration award arising out of a collective bargaining agreement ("CBA") between the Union and Metallurgical Processing Company ("MPC"). MPC is a company located in Warren, Michigan, that

heat treats metal parts for its customers. The heat treating process requires employees to place the parts on racks, which are subsequently placed into furnaces. Productivity at MPC is measured by the percentage of time the furnaces are not heating parts, referred to as "gap time." As a furnace operator/leader since 1999, Odell Phillips was in charge of ensuring the productivity of MPC's furnaces on the second shift.

On October 12, 2009, MPC discharged Phillips for poor job performance. The Union grieved and arbitrated the discharge of Phillips. Arbitrator Joseph Girolamo held that, while MPC's discipline due to Phillips' work performance was appropriate, the discharge of Phillips was unreasonable. Rather, Arbitrator Girolamo determined it was reasonable to impose a 3 week suspension, after which, Phillips returned to work on May 3, 2010.

On June 21, 2010, Paul Owens, Plant Manager, and Jeff Pyne, MPC's President, met with Phillips and his Union Steward Nate Wilson. Owens and Pyne informed Phillips that his phone calls to Owens at home seeking assistance indicated that Phillips was not capable of handling the furnace operator/leader position. Phillips was instructed that his "gap time" was unacceptable, and if Phillips failed to improve, Phillips would be demoted from the furnace operator/leader position. On July 6, 2010, after continued concern of Phillips' performance, the management of MPC demoted Phillips from furnace operator/leader to floor helper.

The Union grieved and arbitrated Phillips' demotion according to the CBA. Pursuant to the CBA, the decision of the arbitrator was to be final and binding upon both parties. The selected arbitrator by the parties, Arbitrator Finkel, held a hearing and permitted the parties to submit further briefing. Afterwards, Arbitrator Finkel issued an eleven-page written Opinion and Award on January 14, 2011, denying the Union's grievance and holding that MPC was justified in demoting

Phillips.  In reaching his conclusion, Arbitrator Finkel framed the issue before him as "whether [MPC] violated the [CBA] or engaged in discrimination when it disqualified [Phillips] from his position as a furnace operator/leader."  Arbitrator Finkel determined that because the action taken by MPC was non-disciplinary as opposed to a disciplinary demotion, he was required to determine if MPC's action was arbitrary, capricious or discriminatory.

Arbitrator Finkel first turned to the language in the management rights clause in the CBA. The management rights clause provides that MPC:

> Shall retain all rights, powers, and authority it has prior to entering into this Agreement, including, but not limited to, the sole right to manage its business and direct the working force . . . including the right to hire, layoff, assign, transfer, promote, to determine the qualifications of employees, and to determine the starting and quitting time and number of hours to be worked, subject only to such regulations, governing exercise of these rights as are expressly provided in this Agreement.

Based on the language in the management rights clause and prior arbitration precedent,  Arbitrator Finkel determined that the MPC had "the right to disqualify or demote an employee from a position, subject to the requirement that the decision not be arbitrary, capricious, or discriminatory."

Arbitrator Finkel then assessed the Union's claim that Phillips was disqualified in a discriminatory manner because of Phillips' prior grievance regarding his previous discharge. Arbitrator Finkel determined that there was no evidence that management was retaliating against him because Phillips to be reinstated to furnace operator/leader in May of 2010 according to Arbitrator Girolamo's Award.  Arbitrator  Finkel further noted that the Union was unable to rebut any of the evidence presented by MPC that Phillips' performance issues warranted disqualification. Arbitrator Finkel noted the undisputed facts that: Phillips' "gap time" was substantially higher than the first and third shift; Phillips' phone calls to Owens involved basic issues that a furnace

operator/leader should have been able to correct on his/her own; and Phillips' incident on June 23, 2010, wherein Phillips spent approximately two and one half hours to fix a hang up in the furnace that was ultimately fixed by the third shift furnace operator/leader.

Arbitrator Finkel then rejected the Union's reliance on Article VI Section 10(c) of the CBA. Section 10(c), titled "Job Bidding Procedure", provides:

> Any employee who has been transferred to a different classification through the job bidding procedure in accordance with the provisions of this section shall be on probation in terms of job performance for the first thirty (30) days of such transfer. If during this period with the exception of the first six (6) working days, the employee fails to maintain a reasonable level of skill and efficiency associated with and necessary to this new assignment, the employee will be returned to the job classification held prior to transfer.

In reviewing the provision, Arbitrator Finkel found no language that limited MPC's ability to disqualify an individual for failing to perform after the conclusion of the 30-day probationary period, providing that the disqualification was not arbitrary, capricious, or discriminatory. Ultimately, Arbitrator Finkel held: "I do not believe the Union has demonstrated that the disqualification of [Phillips] from the furnace operator/leader position violated the [CBA]." The grievance was denied.

While not discussed in Arbitrator Finkel's award, MPC also issued an employee policy manual to its employees. In relevant part, the manual sets forth the general shop rules and regulations. Contained in this section, the manual states that "Poor Job Performance" is subject to the "Regular Disciplinary Steps." "Poor Job Performance" is defined as "[f]ailure to follow procedures, exert normal effort, wasting time, loitering and failure or refusal to follow supervisor's instructions. Insubordination or use of profanity toward a supervisor." The "Regular Disciplinary Steps" are set forth as follows: first offense—written warning; second offense—three-day lay-off without pay; third offense—one week lay-off without pay; and fourth offense—discharge.

On April 13, 2011, the Union filed this action pursuant to §301 of the Labor Management Relations Act, 29 U.S.C. §185, to vacate the arbitration award issued by Arbitrator Finkel. On August 26, 2011, pursuant to the Court ordered briefing schedule, the parties filed the instant cross-motions for summary judgment. The Union requests that the Court vacate the arbitration award and remand the grievance to the parties for arbitration before a different arbitrator with instructions to treat the case as a disciplinary demotion subject to the just cause standard. Defendant disputes that the arbitration award should be vacated and requests that the Court dismiss the Union's Complaint.

### III. STANDARD OF REVIEW

In arbitration cases where a party seeks to vacate a labor arbitration award, the Court has a "limited role." *Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). Once the Court establishes that the award "draws its essence from the contract" because the arbitrator was arguably construing or applying the contract, it does not matter that the arbitrator committed "serious," "improvident" or "silly" errors in resolving the merits. *Misco*, 484 U.S. at 38–39; *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509–10 (2001). In applying the United States Supreme Court precedent, the Sixth Circuit created a three-part inquiry:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute.

*Mich. Family Res., Inc. v. SEIU Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (en banc).

The Sixth Circuit, however, created an exception for when it is appropriate for a court to consider the merits of the dispute. This exception applies when an arbitration decision is "so 'ignor[ant]' of the contract's 'plain language,' *Misco*, 484 U.S. at 38, as to make implausible any contention that the arbitrator was construing the contract." *Mich. Family Res.*, 475 F.3d at 753. In other words, the arbitrator's interpretation of the contract could be " 'so untethered to' to the terms of the agreement . . . that it would cast doubt on whether the arbitrator indeed was engaged in interpretation." *Id.* The Sixth Circuit noted, however, that this exception applies in only rare cases. *Id.*

## IV. ANALYSIS

The Union does not assert that Arbitrator Finkel's award should be vacated based on the Sixth Circuit's three-part inquiry. Rather, the Union rests its claims on the Sixth Circuit's exception. Plaintiff argues that Arbitrator Finkel's award is so "untethered" to the terms of the CBA that he merely applied his own notion of "industrial justice." Specifically, the Union contends that the award is at odds with the 30-day probationary period provided for in the CBA and Defendant's work rules regarding "Poor Job Performance." According to the Union, this language requires poor job performance, such as Phillips', to be addressed by progressive discipline reviewed by a just cause standard. The Union also argues that Arbitrator Finkel failed to take into account MPC's prior reliance on the "Poor Job Performance" work rule to handle inadequate job performance.

As to the 30-day probationary period found in Article VI Section 10(c) of the CBA, the Union argues that Arbitrator Finkel's conclusion renders this clause meaningless because after the 30-day period MPC can demote or disqualify an employee for any reason. The Court disagrees that Arbitrator Finkel's interpretation does not draw its essence from the CBA. As Arbitrator Finkel addressed in his award, "[t]he provision does not limit in any way [MPC's] ability to disqualify an

individual for failing to perform after the conclusion" of the probationary period. Arbitrator Finkel, however, did not state that MPC had unfettered discretion to demote or disqualify an employee after this period. Rather, Arbitrator Finkel stated that MPC's actions were still limited by the arbitrary, capricious, or discriminatory standard. The Court does not find that this interpretation is completely "ignorant" of the plain language in the CBA as to suggest that Arbitrator Finkel was not interpreting the CBA.

As to Plaintiff's reliance on the "Poor Job Performance" work rule, "Poor Job Performance" is defined as "[f]ailure to follow procedures, exert normal effort, wasting time, loitering and failure or refusal to follow supervisor's instructions. Insubordination or use of profanity toward a supervisor." "Poor Job Performance" is subject to a 4-step progressive disciplinary structure. While Arbitrator Finkel makes no reference to this rule in his award, the Court does not find that Plaintiff's reliance on the rule justifies a finding that Arbitrator Finkel's award upholding MPC's demotion of Phillips rather than using the progressive disciplinary structure is "untethered" from the CBA.

The Court first reiterates that its review is limited to whether Arbitrator Finkel's award "draws its essence" from the CBA. *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). To that extent, the CBA has no language specifically addressing poor job performance. The CBA, however, does contain the management rights clause which provides MPC the right "to manage its business and direct the working force . . . including the right to hire, layoff, assign, transfer, promote, [and] to determine the qualifications of employees . . . subject only to such regulations, governing exercise of these rights as are expressly provided in this Agreement." The Court does not find that Arbitrator Finkel was applying his own brand of "industrial justice" when he determined this clause provided MPC the right to disqualify or demote an employee from a

position, subject to the requirement that the decision not be arbitrary, capricious, or discriminatory. See *Mich. Family Res.*, 475 F.3d at 754. Arbitrator Finkel supported his finding with two labor arbitration awards and evidence from Phillips and Union Steward Nate Wilson. Both Phillips and Union Steward Nate Wilson agreed that if an employee is not performing his or her job, then MPC has the right to disqualify that employee.

Second, "Poor Job Performance" as defined in the employee manual contains no language regarding whether all instances of poor job performance must be addressed through the progressive disciplinary structure. The rule states nothing in regards to an employee's inability to handle a job position. Such ambiguity between the rule in the employee manual and the language in the CBA does not suggest that Arbitrator Finkel was not "arguably" construing the CBA. The Court may only refuse to enforce the award if Arbitrator Finkel chooses to apply "his own brand of industrial justice" rather than to interpret and apply the CBA. *Enter. Wheel & Car Corp.*, 363 U.S. at 597.

As to Plaintiff's argument that Arbitrator Finkel failed to take into account MPC's prior actions of relying on the "Poor Job Performance" work rule in disciplining Phillips, the Court finds it unpersuasive. First, it is not clear that Arbitrator Finkel failed to take into account MPC's prior actions of disciplining Phillips. In his award, Arbitrator Finkel noted Phillips' disciplinary record and quoted a portion of Arbitrator Girolamo's award, in which Arbitrator Girolamo addressed the prior disciplinary discharge of Phillips for poor job performance. Second, neither the CBA nor the "Poor Job Performance" work rule indicate that if MPC has disciplined an employee for poor job performance, then that employee may not later be non-disciplinarily demoted for poor job performance.

The Court also declines to find any issue regarding Arbitrator Finkel's allocation of the

8

burden of proof on the Union to suggest that Arbitrator Finkel's decision was "untethered" from the CBA. There is no language in the CBA that sets forth the applicable burden of proof as to the Union's claim. Absent such language, Federal courts will not vacate an arbitration award based on the allocation of the burden of proof. *See Alvey, Inc. v. Teamsters Local Union No. 688*, 132 F.3d 1209, 1212 (8th Cir. 1997) (quoting *Sullivan, Long & Hagerty, Inc. v. Local 559 Laborers' Int'l Union*, 980 F.2d 1424, 1429 (11th Cir. 1993) ("Unless there is specific controlling language in the collective bargaining agreement, . . . 'an arbitrator's decision allocating the burden of proof among the parties or in fixing the legal framework for evaluation of a grievance ordinarily cannot be reviewed in federal court.' "). Furthermore, while the CBA lacked any specific language regarding the allocation of the burden of proof, Arbitrator Finkel supported his decision that in matters of contract interpretation the burden is on the Union according to two prior arbitral decisions—*Avis Rent-A-Car Systems*, 100 LA 1089, 1095 (Cannavo, 1993) and *Edwin Shaw Hospital*, 95 LA 206, 209 (Bittel, 1990). Moreover, even if Arbritrator Finkel made a "serious" or "improvident" error in allocating the burden of proof on the Union, such an error does not rise to the level to permit this Court to interfere with the award. *Mich. Family Res.*, 475 F.3d at 753.

Accordingly, it is not within this Court's scope of review to vacate an arbitrator's award merely because the Union disagrees with the arbitrator's construction of the CBA. *Enter. Wheel & Car Corp.*, 363 U.S. at 596. As such, the Court does not find that Arbitrator Finkel's decision on the merits was so "untethered" from the CBA to suggest that he was not engaged in interpretation of the CBA and, rather, was applying his own notion of "industrial justice." *See Misco*, 484 U.S. at 38 ("[A]s long as the arbitrator is even arguably construing or applying the contract . . ., that a court is convinced he committed serious error does not suffice to overturn his decision."). Plaintiff's

request to vacate Arbitrator Finkel's Opinion and Award and remand the grievance to the parties is denied.

## V. CONCLUSION

Accordingly, for the above reasons, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [dkt 9] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment [dkt 10] is DENIED, and judgment will enter accordingly.

IT IS SO ORDERED.

                                        S/Lawrence P. Zatkoff
                                        LAWRENCE P. ZATKOFF
                                        UNITED STATES DISTRICT JUDGE

Dated: January 25, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 25, 2012.

                                        S/Marie E. Verlinde
                                        Case Manager
                                        (810) 984-3290